# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 18-784V**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*  \*

|  |  |
|---|---|
| ADRIANE DAVIS AND SYLVESTER DAVIS, *on behalf of E.D., a minor child*, | \* \* \* \* \* |
| Petitioners, | \* \* \* |
| v. | \* \* |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | \* \* \* \* \* |
| Respondent. | \* \* |

Special Master Jennifer A. Shah

Filed: March 11, 2026

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*  \*

*Diana Stadelnikas*, Mctlaw, Sarasota, FL, for Petitioners.
*Joseph Leavitt*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On June 4, 2018, Adriane and Sylvester Davis ("Petitioners") filed a petition on behalf of E.D., their minor child, for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program"), for injuries allegedly caused by the Hepatitis A, Varicella, and measles, mumps, and rubella ("MMR") vaccinations E.D. received on June 24, 2016.  ECF No. 1 ("Pet.") at 1.

An entitlement hearing took place on January 28, 2025.  On August 6, 2025, Petitioners filed an application for interim attorneys' fees and costs, requesting a total of $493,394.97,

---

[1] Because this Decision contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services).  **This means the Decision will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

comprised of $429,586.70 in attorneys' fees and $63,808.27 in attorneys' costs.  ECF No. 93 ("Fees App.") at 1-2.  Respondent filed a response to the fees application on August 18, 2025, stating "Respondent is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case."  ECF No. 95 ("Fees Resp.") at 2.  Petitioners filed a reply on August 28, 2025.  ECF No. 96 ("Fees Reply").  This is Petitioners' first motion for interim attorneys' fees and costs.

I hereby **GRANT** Petitioners' application in part and award a total of **$469,781.93** in interim attorneys' fees and costs.

## I.      Legal Standard

### A.  Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act.  *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008).  In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act."  *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated that "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained."  515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees."  609 F.3d at 1375.  *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion.  *See Avera*, 515 F.3d at 1352; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013).  Special masters have viewed the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- as factors to consider in a flexible balancing test.  *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

The undue hardship inquiry looks at more than just the financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel.  *Kirk*, 2009 WL 775396, at *2.  Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel."  *Id*.

### B.  Good Faith

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs only if the special master finds that the petition was brought in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum.*

*Servs*, 105 Fed. Cl. 148, 154 (2012); *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). It "focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioners had an honest belief that their claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

## C. Reasonable Basis

Unlike the good faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

Although the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis. . ." *Id.* at 286. The *Chuisano* court found that a petition that relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y of Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y of Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis").

"[I]n deciding reasonable basis the Special Master needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by

medical opinion." 42 U.S.C. § 300aa-13(a)(1).  Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims.  *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury)).

When determining if a reasonable basis exists, a special master may consider myriad factors, including "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation."  *Amankwaa*, 138 Fed. Cl. at 289.  This approach allows the special master to evaluate each application for attorneys' fees and costs on a case-by-case basis.  *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II.    Discussion

### A.  Undue Financial Hardship

The Federal Circuit has noted that interim fees "are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained."  *Avera*, 515 F.3d at 1352 (Fed. Cir. 2008).  Counsel for Petitioners have worked on this case since 2017.  *See generally* Ex. 133.  Counsel have also incurred substantial costs, particularly those associated with engaging an expert to provide reports and testify at the entitlement hearing.  The total amount for fees and costs requested ($493,394.97) demonstrates that there will be undue financial hardship if an interim award is not granted.  I therefore find that Petitioners would suffer undue hardship without an award of interim fees and costs.

### B.  Good Faith and Reasonable Basis

Respondent has not raised any specific objection to Petitioners' good faith or reasonable basis for this claim, and he leaves the determination to my discretion.  Fees Resp. at 2.  I find that the petition was filed in good faith.

As discussed above, the threshold for reasonable basis is much lower than the burden to prove entitlement to compensation, which requires preponderant evidence.  Here, Petitioners have filed multiple expert reports providing a plausible causation theory, which was central to the case presented at the entitlement hearing.  There is also no dispute regarding E.D.'s diagnosis or the onset of her symptoms.  As such, based on the record as a whole, I conclude Petitioners have provided more than a scintilla of evidence supporting the elements of their case and have maintained a reasonable basis for their claim to this point.

As there is no other reason to deny an award of interim attorneys' fees and costs, I will award Petitioners reasonable fees and costs as described below.

### C.  Attorneys' Fees

Petitioners request a total of $429,586.70 in attorneys' fees. A petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993).

### 1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and issues an annual Fee Schedule.[3]

Petitioners request compensation for the attorneys at the Maglio Christopher & Toale firm ("mctlaw") at the following hourly rates: Mr. Altom Maglio: $362.00 for work performed in 2017, and $400.00 for work performed in 2019; Ms. Anne Toale: $570.00 for work performed in 2024, and $615.00 for work performed in 2025; Ms. Diana Stadelnikas: $372.00 for work performed in 2017, $415.00 for work performed in 2019, $440.00 for work performed in 2020, $470.00 for work performed in 2021, $490.00 for work performed in 2022, $525.00 for work performed in 2023, $560.00 for work performed in 2024, and $605.00 for work performed in 2025; Ms. Elizabeth Abramson: $250.00 for work performed in 2022, $320.00 for work performed in 2024, and $358.00 for work performed in 2025; Mr. FJ Caldwell: $367.00 for work performed in 2017, $385.00 for work performed in 2018, and $404.00 for work performed in 2019; Ms. Jennifer Maglio: $572.00 for work performed in 2025; Ms. Jessica Olins: $410.00 for work performed in 2025; and Ms. LeeAnne Pedrick: $315.00 for work performed in 2024. Ex. 133 at 61-62. Petitioners also request compensation for paralegal work ranging from $145.00-205.00 per hour from 2017-2025. *See id.*

The rates requested for mctlaw are consistent with what has previously been awarded. *See, e.g.*, *Taylor v. Sec'y of Health & Hum. Servs.*, No. 22-335V, 2025 WL 3677445, at *2 (Fed. Cl. Spec. Mstr. Nov. 17, 2025); *Oquendo Vazquez on behalf of A.R. v. Sec'y of Health & Hum. Servs.*, No. 17-1817V, 2025 WL 3143310 at *4 (Fed. Cl. Spec. Mstr. Oct. 16, 2025); *Grace v. Sec'y of Health & Hum. Servs.*, No. 18-757V, 2025 WL 2589270, at *2 (Fed. Cl. Spec. Mstr. Aug. 13, 2025). Accordingly, I find the requested rates are reasonable and that no adjustment is warranted.

### 2. Hours Reasonably Expended

---

[3] The Office of Special Masters Attorneys' Forum Hourly Rate Fee Schedule for 2015 through 2025 can be accessed at: https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules. The hourly rates delineated in the schedules are updated based on the decision in *McCulloch*, 2015 WL 5634323.

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Further, special masters may reduce awards *sua sponte*, independent of enumerated objections from Respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd*, No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton*, 3 F.3d at 1521. It is within a special master's discretion to make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[S]pecial masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), *mot. for rev. denied*, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. It is well-established that billing for administrative and clerical tasks is not permitted in the Vaccine Program. *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989).

The overall hours spent on this matter appear to be reasonable. However, some deductions are necessary for various administrative and clerical tasks. Other special masters have advised Petitioners' counsel several times that attorneys' fees for clerical and administrative tasks are not reimbursable in the Program, and they have reduced attorneys' fees accordingly. *See, e.g.*, *Reed v. Sec'y of Health & Hum. Servs.*, No. 09-650V, 2019 WL 2500417, at *4 (Fed. Cl. Spec. Mstr. May 21, 2019) (reducing the requested attorneys' fees by 5% for administrative and clerical tasks); *Blender v. Sec'y of Health & Hum. Servs.*, No. 16-1308V, 2020 WL 5090439, at *3 (Fed. Cl. Spec. Mstr. Aug. 5, 2020) (reducing the requested attorneys' fees by 5% for administrative and clerical tasks and leaving tasks blank). Here, approximately 18 hours have been spent by paralegals for non-compensable administrative tasks such as: "Draft notice of filing and exhibit list," "review and finalize exhibits for filing," and "update file." *See generally* Ex. 133.

6

I also note that though this case has been litigated extensively, the request for attorneys' fees still appears high. This appears to be due in part to the unusually large number of attorneys who participated in the case. Eight different attorneys worked on this case at various stages. Other special masters have disfavored multiple attorneys working on the same case and have reduced fees accordingly. *See, e.g.*, *Hetrick v. Sec'y of Health & Hum. Servs.*, No. 19-795V, 2025 WL 1555225, at *4 (Fed. Cl. Spec. Mstr. May 7, 2025); *Bartoszek v. Sec'y of Health & Hum. Servs.*, No. 17-1254V, 2024 WL 5200113 at *2 (Fed. Cl. Spec. Mstr. Nov. 26, 2024) (reducing the attorneys' fees requested by Mctlaw when eight different attorneys participated in one case); *Austin ex rel. Austin v. Sec'y of Health & Hum. Servs.*, No. 10-362V, 2013 WL 659574, at *14 (Fed. Cl. Spec. Mstr. Jan. 31, 2013); *Soto ex rel. Soto v. Sec'y of Health & Hum. Servs.*, No. 09-897V, 2011 WL 2269423, at *6 (Fed. Cl. Spec. Mstr. June 7, 2011); *Carcamo v. Sec'y of Health & Human Servs.*, No. 07-483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011).

Due to these factors, I will apply a 5% reduction to the total attorneys' fees requested, or $21,479.34. Petitioners are therefore awarded interim attorneys' fees of **$408,107.36**.

## D. Reasonable Costs

Petitioners request a total of $63,808.27 for costs, consisting of: $4,561.37 for medical record requests, $45.39 for mailing/shipping costs, $1,041.85 for medical literature, $1,522.48 for legal research, $5,325.67 for counsel and the Davis family's travel to the entitlement hearing, $314.26 for trial binders, $854.25 for the entitlement hearing transcript, $49,743.00 for expert costs, and $400.00 for the Court's filing fee. Petitioners provided documentation for the costs associated with the medical record requests, mailing/shipping costs, medical literature, legal research, travel expenses, and the Court's filing fee. *See generally* Ex. 134. As such, I award all these costs in full. I will discuss the remaining requested costs below.

### 1. Expert Costs

Petitioners request a total of $49,743.00 for expert costs, which consists of $48,753.00 for Dr. Gaitanis' reports and participation in the entitlement hearing, and $990.00 for an "immunology consult."

### a. Immunology Consult

Petitioners paid immunologist S. Sohail Ahmed, M.D. for 1.8 hours of work at an hourly rate of $550.00. Ex. 134 at 189. Dr. Ahmed reviewed Dr. Wiznitzer's report and provided Petitioners with a piece of medical literature that seemed to dispute one of Dr. Wiznitzer's arguments, but he did not submit an expert report. I believe Dr. Ahmed's 1.8 hours of work on this case are reasonable. I additionally believe Dr. Ahmed's requested hourly rate is reasonable.[4] I award Dr. Ahmed's expert costs in full.

---

[4] I note that Dr. Ahmed was previously awarded an hourly rate of $500.00 in 2024. *See Kalajdzic v. Sec'y of Health & Hum. Servs.*, No. 17-792V, 2024 WL 4792856, at *4 (Fed. Cl. Spec. Mstr. Oct. 15, 2024).

b.  Petitioners' expert: John Gaitanis, M.D.

Dr. Gaitanis billed a total of $49,743.00 for three expert reports, his participation during the entitlement hearing, and associated travel costs to the entitlement hearing.  Dr. Gaitanis' first invoice documents 12 total hours of work performed at an hourly rate of $400.00.  Ex. 134 at 74-75.  Dr. Gaitanis' second invoice for $4,200.00 documents 10.5 hours of work at the same hourly rate.  *Id.* at 121.  The third invoice for $9,250.00 was for 18.5 hours of work performed at an increased hourly rate of $500.00.  *Id.* at 149.  Dr. Gaitanis' last invoice was for $30,503.00, for 57 hours spent preparing for, participating in, and traveling to the entitlement hearing, along with $2,003.35 for his hotel and train tickets.  *Id.* at 225-33.

The number of hours performed by Dr. Gaitanis seems to be justified and reasonable.  I note that Dr. Gaitanis did bill six hours of "Transportation Time" at $500.00/hour.  A reduction is needed for time billed for travel. In the Vaccine Program, attorneys and experts are usually compensated for time spent traveling (when no other work was being performed) at one-half an approved hourly rate.  *See*, *e.g.*, *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153, at *24 (Fed. Cl. Spec. Mstr. July 25, 2011); *Rodriguez v. Sec'y of Health & Hum. Servs.*, No. 06-559V, 2009 WL 2568468, at *21 (Fed. Cl. Spec. Mstr. Jul. 27, 2009); *English v. Sec'y of Health & Hum. Servs.*, No. 01-61V, 2006 WL 3419805, at *12-13 (Fed. Cl. Spec. Mstr. Nov. 9, 2006). Of course, "[e]ach case should be assessed on its own merits," and this approach to travel time is not an ironclad rule.  *Gruber v. Sec'y of Health & Human Servs.*, 91 Fed. Cl. 773, 791 (2010).  As Petitioners have not provided any reason to compensate this time at the full rate, I will reduce the time spent traveling by half, or three hours, for a deduction of $1,500.00.

Dr. Gaitanis' hourly rates also appear to be reasonable.  Dr. Gaitanis is an experienced and well-credentialed pediatric neurologist.  *See generally* Ex. 25.  Dr. Gaitanis' hourly rate of $500.00 was approved by Special Master Roth in 2024.  *See Hetrick v. Sec'y of Health & Hum. Servs.*, No. 19-795V, 2025 WL 155522, at *5 (Fed. Cl. Spec. Mstr. May 7, 2025)  I will grant the same; therefore no adjustment is necessary.

Lastly, I note that Dr. Gaitanis' hotel room costs were higher than that of Petitioners' counsel and the Davis family's.  *See* Ex. 134 at 231-33.  As such, I will reduce the cost of his hotel room to the same level as counsel's ($675.41), a deduction of $633.70.

The total reduction to Dr. Gaitanis' expert costs is $2,133.70.

**2.**  Trial binders

Counsel for Petitioners paid $314.26 for trial binders.  Because this is a cost associated with litigation, I will grant this in full.  I note that other special masters have reduced fees and costs related to forming and building a trial binder as an administrative cost.  *See Kinney v. Health & Hum. Servs.*, No. 18-1522V, 2025 WL 1305394, at *4, n. 10 (Fed. Cl. Spec. Mstr. Apr. 11, 2025).

---

While Petitioners have not explained why Dr. Ahmed deserves an increase, I do not find the rate objectionable.  I do not make any determination on whether this hourly rate is reasonable.

I award Petitioners a total of **$61,674.57** in attorneys' costs.

### III.    Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of awards of interim attorneys' fees and costs, and based on the foregoing, I **GRANT** Petitioners' application in part.  Petitioners are awarded interim attorneys' fees and costs in the total amount of **$469,781.93,** as follows:

- A lump sum in the amount of **$469,781.93**, representing reimbursement of Petitioners' interim attorneys' fees and costs, to be paid through an ACH deposit to Petitioners' counsel's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[5]

**IT IS SO ORDERED.**

<u>s/ Jennifer A. Shah</u>
Jennifer A. Shah
Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.